IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JULIE PATRICIA MARSHALL | * | |
| | * | |
| v. | * | Civil Case No. JFM-14-3688 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |
| ************* | | |

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the Commissioner's motion for summary judgment and the documentation and medical records filed by Ms. Marshall, who proceeds *pro se*. [ECF Nos. 27, 28]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Marshall protectively filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") in 2012. (Tr. 175-82). Her applications were denied initially and on reconsideration. (Tr. 107-11, 114-17). An Administrative Law Judge ("ALJ") held a hearing on May 20, 2014, at which Ms. Marshall was represented. (Tr. 29-56). Following the hearing, the ALJ determined that Ms. Marshall was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 10-23). The Appeals Council denied

Ms. Marshall's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Marshall suffered from the severe impairments of status post bilateral rotator cuff repair surgeries, cervical degeneration, and obesity. (Tr. 12). Despite these impairments, the ALJ determined that Ms. Marshall retained the residual functional capacity ("RFC") to "sit, stand, and walk 8-hours in a workday, lift 5 pounds frequently and 10 pounds occasionally, with no repetitive overhead lifting. She can grasp, handle, bend, crawl, crouch, and stoop frequently." (Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Marshall could perform her past relevant work as a cosmetologist and other jobs existing in significant numbers in the national economy, including the jobs of cashier and sales attendant. (Tr. 21-22). Therefore, the ALJ concluded, Ms. Marshall was not disabled. *Id.*

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Ms. Marshall's favor that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12). At step two, the ALJ found the severe impairments listed above. (Tr. 12-14). The ALJ also assessed Ms. Marshall's carpal tunnel syndrome, diabetes, sleep apnea, depression, and anxiety disorder, but found that those

conditions were not severe because they did not cause more than minimal limitation in Ms. Marshall's ability to perform work activities. (Tr. 14-16). A thorough review of the record does not demonstrate any significant functional limitations relating to those conditions. Accordingly, I find no error in the ALJ's step two analysis.

At step three, the ALJ noted that the State agency examining physicians had concluded that no listings were met or equaled. (Tr. 14). The ALJ further confirmed that after reviewing the records, he found no documented evidence to suggest that any listings had been met or equaled. *Id.* The ALJ specifically considered Listings 1.02 and 1.04 as they pertained to Ms. Marshall's shoulder and cervical impairments, but determined that the specific criteria of those listings had not been met. (Tr. 15). Finally, the ALJ noted that Ms. Marshall's obesity did not exacerbate any other condition to the point that a listing had been met or equaled. I find no error in the ALJ's thorough listings analysis.

At step four, the ALJ determined Ms. Marshall's RFC. The function of this Court is not to review Ms. Marshall's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (*citing* 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman*, 829 F.2d at 517; see also 42 U.S.C. § 405(g). Although there might also be evidence in the record from which a contrary conclusion could be drawn, applying that deferential standard to the evidence in this case, the ALJ's conclusions must be affirmed.

The ALJ provided a summary of Ms. Marshall's allegations from her testimony and her written submissions. (Tr. 15-16). The ALJ also provided a comprehensive summary of the medical evidence derived from treatment notes from Ms. Marshall's treating and examining

doctors, including the records from her various surgeries. (Tr. 16-19). The ALJ noted that those records reflected that Ms. Marshall had made a successful recovery from shoulder surgery and had no significant decreases in strength or sensation. (Tr. 19). The ALJ also assessed Ms. Marshall's credibility and determined that her activities as reported to her various treating physicians were more extensive than represented in her testimony. (Tr. 20) Finally, the ALJ evaluated and assigned weight to the opinions of the consultative examiner, Dr. Barrish, the State agency physicians, and two treating physicians, Drs. Gilotra and Koh. (Tr. 20-21).[1] The RFC determined by the ALJ aligns with the findings of Dr. Barrish and is, in fact, more restrictive than the opinions of the state agency physicians as to Ms. Marshall's ability to lift and carry. (Tr. 20). The ALJ explained his assignment of little weight to Dr. Koh's opinion by noting that the information contained in the opinion was not supported by Dr. Koh's own treatment notes. (Tr. 20-21). While a different evaluation of the medical opinions in the case could have resulted in a different outcome, this Court is not permitted to reweigh the evidence. The opinions of Dr. Barrish and the State agency physicians, in addition to the supporting treatment records, provide substantial evidence to support the ALJ's conclusion. Under the applicable legal standard, then, I recommend that the ALJ's RFC assessment be affirmed.

Next at step four, the ALJ concluded, based on the testimony of the vocational expert, that Ms. Marshall could perform her past relevant work as a cosmetologist. (Tr. 21). Ms. Marshall contests that finding, arguing that the VE did not have sufficient understanding of the physical demands of that job. The VE testified that he was basing his testimony on his experience doing placings and evaluations in cosmetology positions. (Tr. 50-52). However,

---

[1] Ms. Marshall contends that she believes that Dr. Barrish examined her before March, 2013, and that he "knew nothing of radiculopathy." I find no basis to question the date of the examination, which is entirely consistent with the fact that Ms. Marshall applied for benefits in the fall of 2012, and the fact that the case development sheet indicates that the appointment was scheduled in February of 2013. (Tr. 847). Moreover, Dr. Barrish's examination report included a positive Spurlings test on the left side, and his summary included a finding of "cervical spondylosis with left cervical radiculopathy." (Tr. 840). Thus, it is clear that Dr. Barrish considered Ms. Marshall's radiculopathy in reaching his assessment.

even assuming, without concluding, that Ms. Marshall was unable to do her past relevant work, the ALJ conducted an alternative inquiry under step five of the sequential evaluation and found other jobs that Ms. Marshall could perform. In response to a hypothetical posed by the ALJ, which matched the RFC the ALJ later determined, the VE cited several jobs, including cashier and sales attendant. (Tr. 52-53). The ALJ relied on that VE testimony in his opinion. (Tr. 22). The ALJ's alternative step five determination, therefore, was supported by substantial evidence.

Finally, I note that Ms. Marshall attached recent medical records to her letter and alleges that her condition has worsened. [ECF No. 27]. Specifically, the medical records reflect a diskectomy and fusion performed on her cervical spine in November, 2014, and a "residual functional capacity form" completed by Dr. Koh in February, 2015 discussing the 2014 surgery and follow-up treatment. In the context of this appeal, this Court cannot consider evidence that was not before the Commissioner, except under very limited circumstances where the evidence is both new and material. *See Smith v. Chater*, 99 F.3d 635, 638, n. 5 (4th Cir. 1996). To establish that the evidence was material, Ms. Marshall would have to show that the evidence might reasonably have changed the decision of the Commissioner. *See Wilkins v. Sec., Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); 42 U.S.C. § 405(g). Here, the Commissioner's decision was rendered in May of 2014, approximately six months before the surgery, and shortly following a physician's assessment in February, 2014 that Ms. Marshall was "doing well with good return of function" after her most recent rotator cuff surgery, and that she had intact strength despite ongoing radiculopathy. (Tr. 1591-92). The newly submitted records do not substantiate any relevance to the time pre-dating the ALJ's opinion. Accordingly, the evidence pertaining to Ms. Marshall's cervical surgery and her post-surgical condition cannot be considered regarding this appeal, but would only be relevant to considering a subsequent application for benefits.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 28];

2. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

3. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: July 9, 2015                                          /s/
                                                             Stephanie A. Gallagher
                                                             United States Magistrate Judge